# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**EUGENE CHEW, JR.**                                                      **PLAINTIFF**

**v.**                    **CASE NO. 3:10CV00199 BSM (Lead Case)**

**AMERICAN GREETINGS CORPORATION**                         **DEFENDANT**


**DAVID MARK DUNCAN and**                                     **PLAINTIFFS**
**NANCY DUNCAN**

**v.**                    **CASE NO. 3:10CV00214 BSM (Member Case)**

**AMERICAN GREETINGS CORPORATION**                         **DEFENDANT**


**DANIEL CHASE HOSKINS and**                                  **PLAINTIFFS**
**WHITNEY DALE HOSKINS**

**v.**                    **CASE NO. 3:10CV00124 BSM (Member Case)**

**AMERICAN GREETINGS CORPORATION**                         **DEFENDANT**

## ORDER

The motion for summary judgment [Doc. No. 93] of defendant American Greetings

Corporation is granted, and this case is dismissed with prejudice.

## I. BACKGROUND

Viewed in the light most favorable to plaintiffs, the non-moving parties, the

undisputed facts are as follows.  This case arises from injuries resulting from an electrical

incident that occurred on September 23, 2009, when plaintiffs Eugene Chew, Jr., David

Duncan, and Daniel Chase Hoskins were working to repair an electrical line at American

Greetings's facility in Osceola, Arkansas.  At the time, plaintiffs were employed by Osceola Municipal Light & Power (OMLP) company.  Plaintiffs' Response to Defendant's Statement of Undisputed Facts [Doc. No. 104] ("Pl's Resp. to Def's SUF"), ¶ 2.  OMLP owns the electrical distribution lines and facilities within the city limits of Osceola, but American Greetings owns the electrical lines and equipment at its plant.  *Id.* at ¶ 1.  Duncan, the crew supervisor, had more than 23 years of experience and training.  *Id.* at ¶¶ 3-4.  Chew had worked at OMLP for more than a decade, and Hoskins was an apprentice lineman.  *Id.* at ¶¶ 4-6.  Together, Duncan and his crew regularly worked on overhead electrical lines, primarily those connected to commercial utility subscribers but also those connected to residential subscribers.  *Id.* at ¶ 7.

On the day of the incident, American Greetings employee Jimmy Avery noticed a burnt "stinger" and a blown fuse on one of the outside utility poles at American Greetings's plant.  *Id.* at ¶ 9.  A "stinger" is an electrical line running from a utility pole to a transformer.  *Id.* at ¶ 10.  As a general principle, electricity comes into the transformer at a certain voltage and the transformer steps it down to a lower voltage.  *Id.* at ¶ 11.  At American Greetings's plant, the wooden utility poles and stingers were originally installed by OMLP.  *Id.* at ¶ 14.

After Avery noticed the loose stinger, he informed American Greetings maintenance supervisor Ronnie Housman.  *Id.* at ¶ 12.  Housman then called and notified OMLP electrical manager Billy Griffin, who instructed Duncan and his crew ("plaintiffs") to meet him at American Greetings's facility.  *Id.* at ¶¶ 12-13, 15.  Plaintiffs met Griffin outside the facility, at the area of the plant near the utility pole and transformer with the loose stinger.  *Id.* at ¶

2

16.  When plaintiffs arrived, Griffin was discussing the situation with American Greetings maintenance supervisor Lance Collins.  *Id.* at ¶ 17.  A specialized socket wrench was used to open the exterior and interior doors to the secondary side of the transformer—that is, the side of the transformer with the lower, stepped down voltage.  *Id.* at ¶ 21.  On the inner part of the exterior door, there was a manufacturer's plate which specified that the voltage going into the transformer was 13,800 volts (the primary voltage) and the voltage going out of the transformer was 4,160 volts (the secondary voltage).  *Id.* at ¶¶ 22-23.  The transformer's interior door was painted red and warned "DANGER HIGH VOLTAGE."  *Id.* at ¶ 24.

After the transformer's doors were opened, Griffin instructed Duncan to get a voltmeter from plaintiffs' truck to measure the transformer's voltage.  *Id.* at ¶ 20.  Duncan incorrectly assumed that the transformer's voltage did not exceed 480 volts and retrieved a voltmeter that had a safety rating of only 1,000 volts.  *Id.* at ¶ 27.  Although OMLP owned a special voltmeter capable of testing above 1,000 volts, it was stored at a warehouse.  *Id.* at ¶ 34;  [Doc. No. 103-1] (David Duncan's Deposition), 141:15-16.  Plaintiffs also owned a fiberglass "hot stick" that extended up to 45 feet to distance them from a potential arc flash, but it did not fit the voltmeter used by Duncan.  Pl's Resp. to Def's SUF at ¶ 34.  When Duncan approached the 4,160-volt secondary side of the transformer with the voltmeter rated for only 1,000 volts, it caused an electrical arc flash because the voltmeter was incapable of handling the 4,160 volt current of the transformer.  Pl's Resp. to Def's SUF at ¶ 28.  The electrical arc flash resulted in injuries to plaintiffs.

Although plaintiffs did not read the manufacturer specification plate, each knew that

3

the transformer was energized. *Id.* at ¶¶ 25-26. Each plaintiff was trained and qualified to work on high voltage electrical equipment and knew how to measure voltage properly. *Id.* at ¶¶ 29-30. Duncan was also taught to conduct a job-hazard analysis before undertaking electrical work. *Id.* at ¶ 31. Although plaintiffs had never worked on a pad-mount transformer that was more than 480 volts, each knew to stop and think, analyze the environment, and determine the voltage of lines and equipment before undertaking any work. *Id.* at ¶¶ 29, 32.

Plaintiffs filed this suit on August 19, 2010, claiming that American Greetings committed multiple acts of negligence which proximately caused the electrical arc flash. American Greetings now moves for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if, after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist and the movant is entitled to judgment as a matter of law." *Nelson v. Corr. Med. Servs.*, 533 F.3d 958, 961 (8th Cir. 2008) (citing Fed. R. Civ. P. 56); *Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008)). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Flores v. United States*, 689 F.3d 894, 902 (8th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of her pleadings, but her

response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, all reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Holland v. Sam's Club*, 487 F.3d 641,643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter,* 540 F.3d 742, 750 (8th Cir. 2008).

### III. DISCUSSION

The question presented is whether American Greetings had a duty to warn plaintiffs of the danger that caused plaintiffs' injuries. "The question of the duty, if any, owed a plaintiff alleging negligence is always one of law and never one for the jury." *Culhane v. Oxford Ridge, LLC*, 362 S.W.3d 325, 327 (Ark. Ct. App. 2009). American Greetings's motion for summary judgment is granted because plaintiffs were injured by an arc flash, which is an obvious hazard of the work plaintiffs were hired to perform. As a matter of law, American Greetings had no duty to warn plaintiffs of this type of danger.

It is undisputed that plaintiffs are trained electricians that were called by American Greetings to its facility to repair an electrical problem. Plaintiffs were aware that American Greeting's electrical lines were energized and knew how to properly determine the voltage of the transformer that arc flashed. They knew that an arc flash could occur if they attempted to measure the transformer's current voltage with a voltmeter not adequately rated for the transformer's operating voltage. Despite all of this, plaintiffs failed to verify the operating voltage by reading the manufacturer plate inside the transformer's exterior door. Plaintiff Duncan assumed the operating voltage was 480 volts because that was the operating voltage of other transformers in the area. Without ever verifying the operating voltage, Duncan then proceeded to measure the transformer's current voltage with a voltmeter that was safety tested for only 1000 volts. This failure to use proper equipment caused the arc flash that injured plaintiffs.

American Greetings cites *Jackson v. Petit Jean Electric Co-op*, 606 S.W.2d 66, 68 (Ark. 1980) for the proposition that it owed no duty to warn plaintiffs of the danger of an arc flash because that danger was known to plaintiffs and was an integral part of the electrical work they were hired to perform. In *Petit Jean*, the plaintiff worked for an independent electrical contractor that was hired to rebuild the electrical distribution lines of the defendant electric cooperative. *Id.* The plaintiff was injured when he came into contact with the defendant's energized lines and he claimed the defendant was negligent by failing to insulate or de-energize the lines. *Id.* The Arkansas Supreme Court recognized that "an employer of an independent contractor owes a common law duty to the contractor's employees to exercise

ordinary care for their safety and to warn against any hidden dangers or unusually hazardous conditions." *Id.* The Court, however, affirmed summary judgment for the defendant, holding that:

> [There is no] duty upon [defendant] to isolate or de-energize its lines or to warn employees of an electrical contractor that the work as contracted for would be dangerous if not done properly. Certainly, it cannot be seriously contended that [defendant] should isolate lines from the employees of an electrical contractor whose compensation and contractual obligations expressly contemplate working around energized lines. *The duty of an employer of [an] independent contractor to use ordinary care or to warn of latent dangers does not contemplate a duty to warn of obvious hazards which are an integral part of the work the contractor was hired to perform.*

*Id.* (emphasis added).

In response, plaintiffs cite *Van DeVeer v. RTJ Incorporated*, 101 S.W.3d 881 (Ark. 2003), for the proposition that American Greetings owed them the duty owed to business invitees. In *Van DeVeer*, the plaintiff worked for a glass repair company that had been hired to repair the windows of the defendant's greenhouses. *Van DeVeer*, 101 S.W.3d at 882. The plaintiff noticed that a staircase leading down to one of the greenhouses was missing a handrail and appeared unsafe. *Id.* Nevertheless, he tried to use the stairs a few days later and fell due to a gap at the top step. *Id.* at 882-83. The trial court granted summary judgment for the defendant pursuant to the open and obvious danger rule, which provides that a landowner has no duty to protect an invitee from a dangerous condition on the property that is known by or obvious to the invitee, unless the landowner should reasonably anticipate that the invitee will be exposed to the danger despite the invitee's knowledge of the condition or its obvious nature. *Id.* at 882, 884. The Arkansas Court of Appeals reversed, holding that

7

there was a genuine issue of fact as to whether the plaintiff had knowledge of the particular

dangerous condition—the gap at the top of the stairs—that caused him to fall. *Id.* at 884-85.

It also held that there was a genuine issue of fact as to whether the defendant should have

reasonably anticipated that the plaintiff would be injured by the dangerous condition of the

stairs despite his knowledge of it or its obvious nature. *Id.* at 887.

Plaintiffs rely on *Van DeVeer* to argue that there are genuine issues of fact as to (1)

whether they knew of certain aspects of American Greetings's electrical system relevant to

the danger of an arc flash; and (2) whether American Greetings should have anticipated that

an arc flash would occur, even though that danger was known to plaintiffs. As pointed out

by American Greetings, the Arkansas Court of Appeals later distinguished *Van DeVeer* in

*Culhane v. Oxford Ridge, LLC*, 362 S.W.3d 325 (Ark. Ct. App. 2009), where the court

followed the reasoning of *Petit Jean*. In *Culhane*, a painter was struck and killed by a car

while painting the entrance of the defendant's residential subdivision, which abutted a busy

section of the highway. *Culhane*, 362 S.W.3d at 326. His estate sued the subdivision owner

and the trial court granted summary judgment. On appeal, the plaintiff relied on *Van DeVeer*

in arguing that genuine issues of fact existed as to whether the defendant should have

"reasonably anticipated" that the painter would be exposed to the danger of oncoming traffic

despite his knowledge of that danger or its obvious nature. *Id.* The Arkansas Court of

Appeals rejected this argument, holding that:

> This was not a premises in which the occupier of the premises knew of a
> dangerous situation but failed to rectify it, even if it was obvious. Rather, in
> this case, Culhane, as an independent contractor, was aware that the traffic on

> Arkansas State Highway 12 posed an obvious hazard integral to the work that
> he was hired to perform—to stain the entrance of the subdivision that abutted
> Highway 12

*Id.* at 329-330.

Summary judgment should be granted for American Greetings because plaintiffs are electricians who were hired to repair an electrical problem and were injured by an arc flash which is a danger inherent to electrical work. As a matter of law, American Greetings had no duty to warn plaintiffs that the transformer could arc flash if approached with an inadequately rated voltmeter because that danger was already known to them and was "an integral part of the work [they were] hired to perform." *Petit Jean*, 606 S.W.2d at 68.

Plaintiffs, however, argue that there are genuine issues of material fact in dispute because there are unique characteristics about American Greetings's electrical system that made the danger of an arc flash less apparent to plaintiffs and that American Greetings had a duty to disclose these characteristics. Specifically, plaintiffs note that all of the surrounding transformers were 480 volts and not 4,160 volts. They also state that the door of the transformer that arc flashed was opened such that the manufacturer plate was obscured and this prevented them from reading the voltage specifications which would have informed them of the correct equipment to use. Plaintiffs also allege that American Greetings failed to comply with certain provisions of the National Electric Code and the Occupational Safety and Health Administration by failing to maintain an electrical safety plan, a one-line diagram of the electrical system, or an exterior voltage warning on the transformer.

The flaw in these arguments is that the dangerous conditions asserted by plaintiffs are

not the conditions that caused their injuries.  The dangerous condition at issue was the potential for the transformer to arc flash if approached with an inadequately rated voltmeter.  And, it is undisputed that plaintiffs knew of this danger.  They could have determined the operating voltage by simply moving the transformer's inner door so as to make the manufacturer plate visible.  They also could have chosen not to approach the transformer with the voltmeter until they knew the operating voltage with certainty.  Instead, plaintiffs incorrectly assumed that the operating voltage was 480 volts and approached it with a voltmeter rated for only 1000 volts. Given these undisputed facts, summary judgment is warranted.

Finally, plaintiffs assert that even if a dangerous condition was known to them, summary judgment is improper because there is a genuine issue of fact as to whether American Greetings should have reasonably anticipated plaintiffs would encounter the danger despite their knowledge of it or its obvious nature.  In *Van DeVeer*, the court determined that "reasonable minds could differ" as to whether the defendant flower shop should have anticipated that the plaintiff would use the defective stairs, even though he had previously noticed they looked unsafe, because the stairs led directly to the greenhouse the plaintiff was hired to repair.  Here, however, no juror could reasonably find that American Greetings—a landowner with no specialized knowledge of electrical lines—should not only have been aware of the danger that a transformer can arc flash, but should have also anticipated that plaintiffs would encounter the arc flash despite their knowledge of it.  As a matter of law, American Greetings owed no duty to warn plaintiffs of the danger of an arc

10

flash or to otherwise ensure that plaintiffs avoided that danger because it was a known danger inherent in the electrical work plaintiffs were hired to perform. *Petit Jean*, 606 S.W.2d at 68. Accordingly, because no duty was owed, American Greetings is entitled to summary judgment.

## IV. CONCLUSION

For the reasons set forth above, American Greetings's motion for summary judgment [Doc. No. 93] is granted. Because summary judgment is granted on plaintiffs' negligence claims, summary judgment is also granted on the loss of consortium claims of Nancy Duncan and Whitney Hoskins. All pending motions are denied as moot.

IT IS SO ORDERED this 5th day of March 2013.

_____
UNITED STATES DISTRICT JUDGE